## STATE *vs.* CHARLES W. CHURCH.

Upon a prosecution for obtaining property by false pretences, held that false statements made by the accused with regard to the transaction six months after it occurred, were not admissible as going to show that he acted at the time with a fraudulent intent.

The accused and one *F* had agreed to exchange certain lands, the latter to pay to the former a certain sum in cash, and the former to make a mortgage back, upon the land received by him, to secure a note for an agreed amount to be made by some responsible person. *F* executed a deed of his own land to the accused, and delivered it with the money to an agent, who was to deliver the same to the accused if the conditions were complied with, and get his deed and the mortgage. The agent delivered the deed and money and received from the accused his deed and mortgage. The agent then enquired whether the note was a valid one and the maker of full age and responsible. The accused replied that he was entirely responsible and of full age. In fact he was without property and a minor. The agent believed the statement of the accused to be true, and but for its being so made and believed would have demanded back the deed and money. The statement was not communicated to *F* until the next day. Held, upon an information for obtaining the property of *F* by false pretences, that as the false representations were made after the delivery of the deed and money, they could not be regarded as having induced the delivery.

Whether the statute with regard to false pretences, under the terms "any money, goods, chattels, or other valuable thing," embraces land—(discussed in the argument).

INFORMATION against Charles W. Church and Newton S. Waldo, upon several counts, for obtaining land and money by false pretences; brought to the Superior Court in Hartford County, and tried to the jury, on the plea of not guilty, before *Culver, J.*

Upon the trial the Attorney for the State offered evidence to prove, and claimed to have proved, the following facts: In May, 1873, one John W. Finley was the owner of a farm in Glastonbury, and employed his daughter, Mrs. Lincoln, to sell the same, and she placed the farm in the hands of the defendant Waldo for sale. Waldo proposed to Church, who was the owner of a piece of land in Hartford, to exchange the farm for his land. The farm was unincumbered, and the property of Church was mortgaged to the amount of $4,000, which indebtedness Church had assumed and agreed

to pay, and was liable therefor.   The farm was valued at and worth $7,000, and the land of Church was valued at and worth $8,000, including the mortgages.  ˙Church proposed that Finley should assume the mortgages, and that he would thereupon give Finley a mortgage for the same amount upon the farm, and Finley should pay the $1,000 difference in cash; but Finley refused to assume the mortgages.   Church thereupon proposed to Waldo that he should give Finley a mortgage upon the farm, for $4,000, to secure a note signed by some person other than Church, and Waldo communicated this proposal to Finley, who approved of the same, provided the note should be signed by some person who was responsible.   Finley thereupon executed a deed of his property to Church, and delivered the same to Mrs. Lincoln, and authorized her to deliver the same to Church, and pay him $1,000, upon the following conditions: that Church should deliver to her a deed of his property; also a note of some responsible person, for $4,000, and a mortgage of the farm by Church to secure the same; also an agreement by Church that Finley should only be obliged to pay seven per cent. on the mortgage on the property of Church, upon which it had been originally agreed that ten per cent. should be paid, and that Church should agree to hire the property so conveyed to Finley, for a year, at a rent of $600; and Mrs. Lincoln came to˙ Hartford and gave the deed and the thousand dollars to Waldo, with directions to him to deliver the same on the above conditions. Waldo thereupon delivered the deed and money to Church, and Church delivered to Waldo a deed of his property, an agreement in relation to interest, and to hire the house; also a mortgage of the farm, and a note secured thereby, which note was not the note of a responsible person, but of a minor, who had no property.

Church stated to Waldo, that if Mrs. Lincoln was not satisfied with the deeds and papers, he would exchange them if he would bring them back.   Waldo delivered them to Mrs. Lincoln, who on receiving them asked Waldo whether the maker of the note was responsible, and of full age, to which Waldo replied that he was responsible, was a man of large

means and perfectly good, and was of full age. These statements were not communicated to Mr. Finley until the next day, and Mrs. Lincoln testified that if these statements had not been made to her, and she had not believed them to be true, she should have demanded the money and deeds back from Church, and if necessary would have taken proper legal steps to recover the property.

The counsel for the defendants thereupon asked the court to charge the jury, that even if they found the matters stated by Mrs. Lincoln, and claimed to be proved by the State, to be true, there could be no conviction upon the information, for several reasons.

1st. That upon the evidence it appeared that the false representations claimed were made after the delivery of the deeds, and after the transaction had been closed, and that it must be proved, to sustain the information, that the false representations were made before the $1,000 was paid, and the deed of the farm delivered to Church, and his deed and mortgage and note delivered by him.

2d. That unless the State proved that the false representations were known to Finley before he authorized the transaction, and before the deeds and money were actually delivered, so that thereby he was induced to authorize them to be delivered, no conviction could be had; and that as it was not claimed that the representations made to Mrs. Lincoln were known to Finley when he authorized the delivery of the money and deed, no conviction could be had.

3d. That the allegations in each count being that the false representations were made to Finley, and induced him to part with his property, those allegations were not sustained by evidence that he had authorized an agent to convey the property before the false representations were made, and that such agent was induced to convey the property under the circumstances alleged, and without Finley's having any knowledge of a reliance upon the representations.

4th. That to authorize the admission of the evidence, or its effect as tending to prove any allegation in the information, it should have been alleged that the representations were

made to Mrs. Lincoln as the agent of Finley, and induced her to deliver the deeds.

But the court overruled all the claims of the defendants, and refused to charge as requested, but charged the jury that each of the counts was sufficient in law to warrant a conviction, that the evidence was admissible, and that if the jury found the facts as claimed by the State, they were in law warranted in finding a verdict of guilty, on each and every count in the information; and also charged as follows:

"To convict either of the prisoners, you must be satisfied beyond a reasonable doubt that representations calculated to deceive were made by him; that these representations were false, and were made with intent to defraud; and that they induced Finley to part with his property. If any one of these conditions is not proved, the State fails to make out a case. If the representations were false, and the accused did not know it, or if Finley were not induced to part with his property by the false representations, the State must fail. Fraudulent intent must be proved as alleged. It is claimed that the State must fail because the statements were made to Mrs. Lincoln. If you find the statements were made to her, knowing she was acting as agent of Finley, it is the same in law as if they were made to Finley. The charge is, that the defendants conspired together to defraud Finley, and represented that the note in question was a genuine note. Very much depends on that fact as giving a coloring, for if they palmed off a forgery, knowing it to be such, it shows an intent to defraud. The State claims that the offense may have been committed if the signature is genuine. If you find that the prisoners made false representations as to the character and responsibility of the signer, and by means thereof obtained property with intent to defraud, the case is within the statute. You must be satisfied that the declarations were made before the transaction was consummated."

The Attorney for the State in his opening evidence offered to prove a conversation between one Joslyn and Church in November, 1874, the deeds having been delivered in May preceding, in which it was claimed that Church said to Joslyn

that the signer of the note came here from New York, and had gone back; that he did not know him, or what his address was; and that he was a curbstone broker; which statements the Attorney for the State claimed were untrue. To the admission of this evidence the defendant Church objected as irrelevant and not admissible for any purpose, but the court overruled the objection, and admitted the evidence as tending to show that Church, at the time the money and deed of the farm were obtained, was actuated by an intent to defraud Finley, provided the jury should be satisfied that Church knew, as the Attorney claimed, that the statements so made to Mr. Joslyn were in fact untrue.

The jury having returned a verdict of guilty against both defendants, they filed a motion in arrest of judgment on the ground of the insufficiency of the information, which motion was overruled by the court. The defendant Church thereupon filed a motion for a new trial for errors in the rulings and charge of the court, and also a motion in error.

*C. E. Perkins*, in support of the motions.

1. The first two counts of the declaration, which charge the obtaining of land by false pretences, are insufficient. The statute under which this prosecution was brought, punishes the obtaining by false pretences "any money, goods, chattels, or other valuable thing." Rev. Stat. of 1866, p. 278. We believe no case can be found where obtaining real estate has been held to be included under such a statute. On the contrary, it has been distinctly held that it did not. *State* v. *Burrows*, 11 Ired. Law, 477; *Commonwealth* v. *Woodrun*, 4 Penn. Law J. Rep., 207. It is a well known rule of construing statutes as well as contracts, that general words added to particular only include other particulars of the same kind. *State* v. *McGarry*, 21 Wis., 496; *State* v. *Sumner*, 10 Verm., 587; *Sandman* v. *Breach*, 7 Barn. & Cress., 96; *Queen* v. *Neville*, 8 Adol. & El. N. S., 452.

2. It appears upon the motion, that Mr. Finley authorized his daughter to deliver the money and deed to Church upon certain conditions; that she gave the deeds and money to

Waldo to deliver to Church, and receive the deeds, papers, and note, which had been talked about; that Waldo, in pursuance of this authority, did deliver the deed and money to Church, and received from him the deeds, note, &c.   The transaction, then, so far as obtaining the money and the deed was concerned, was closed at that time.   Now nothing is better settled than that to convict under this statute it is necessary both to allege and prove that the property was obtained *by means of the false representations*.   There was no dispute about the facts, and the court was asked to charge the jury that this evidence did not support the information.   The judge however refused so to charge, but merely told the jury that they "must be satisfied that the declarations were made before the transaction was consummated."   It was claimed by the State that the neglect of Mrs. Lincoln to try to recover this property back from Church was a parting with the property, and the jury might naturally have supposed from the judge's charge that this was so, or they might not have known that the title passed at the time of the delivery of the deeds.   It seems to us clear that the court erred in not charging as we desired, and there should be a new trial on this ground.

3.   The various counts in the indictment all allege that the false representations were made to Finley, and induced him to convey the property and pay the money to Church, while the evidence was that Finley knew nothing at any time of these representations till after the conveyances were made, and that they were not communicated to him at any time before the deeds were finally delivered and the money paid. We submit that this evidence does not sustain the allegations. See the form proper for the case of representations made to an agent, in 2 Chitty Crim. Law, 1007.

4.   The court also erred in allowing the evidence of Joslyn to be introduced.   It is difficult to see upon what ground this evidence could be offered.   The fact that the defendant made other false representations to other persons, and obtained property from them, would not be admissible in a suit for a particular case where no general conspiracy was charged. Much less would the fact that he made other false representa-

tions to some third person without any intention of obtaining property by them; nor would it be different if the false statements were the same.

*W. Hamersley*, State's Attorney, contra.

1. Obtaining a deed of land by false pretences is within the statute. The case of *State* v. *Barrows*, 11 Iredell, 477, does not conflict with this claim. The ground of that decision is that nothing can be obtained in violation of the statute against false pretences that is not the subject of theft. By our law stealing a deed of land is punishable as theft. The charge of the court upon this point, even if erroneous, did no harm to the prisoner, for the jury could not have convicted him of obtaining the land or the deed, without convicting him of obtaining the money. Error in the charge of the court on any point is not ground for a new trial, if, had the instruction been correctly given, the result must have been the same. *Rogers* v. *Hillhouse*, 3 Conn., 405.

2. The court correctly charged the jury that they must be satisfied that the false pretences were made before the transaction was consummated, and properly left to the jury the question of fact whether or not the transaction was consummated and the deed and money obtained before the false pretences were made. If the title and right of possession to the deed and money did not pass to Church until Mrs. Lincoln accepted the note, and this acceptance was induced by the false pretence, the crime is complete. 2 Bishop Cr. Law, § 465.

3. The court correctly charged the jury that if the pretences were made to Mrs. Lincoln, knowing her to be the agent of Finley, they must be taken as made to Finley. "The principle of common law, '*qui facit per alium, facit per se,*' is of universal application, both in criminal and civil cases." HOSMER, C. J., in *Barkhamstead* v. *Parsons*, 3 Conn., 8. And the converse is equally true. Story on Agency, § 417. One who makes false pretences by an agent is guilty as principal, and punishable in the jurisdiction where the pretences are made. *Adams* v. *The People*, 3 Denio, 190. A

false pretense to the agent is a false pretense to the principal. *Commonwealth* v. *Call*, 21 Pick., 515; *Commonwealth* v. *Harley*, 7 Met., 462; *Thompson* v. *Rose*, 16 Conn., 79; 2 Bishop Cr. Law, §§ 472, 473.

4. The testimony of Mr. Joslyn was clearly admissible. It showed the fraudulent intent with which he acted when he obtained the property.

FOSTER, J. A motion in error and a motion for a new trial have both been filed in this case.

Various grounds of error were assigned and have been insisted on, and several reasons have been urged for a new trial. We confine ourselves to the discussion of two of these reasons, as these will dispose of the case, and we omit any examination of the other questions raised, as on them we might have some doubts, and possibly entertain differences of opinion.

First, as to the admissibility of Joslyn's testimony.

The crime charged against the accused was claimed to have been committed in the month of May, 1874. He had a conversation with Joslyn in the month of November following, and made certain declarations to him that were offered in evidence and received, though objected to. These declarations related to a promissory note which had been disposed of by the accused to Mr. Finley, whose property he was charged with having obtained fraudulently. As testified by Joslyn, the accused said that the signer of the note came here from New York and had gone back; that the accused did not know him, or what his address was; and that he was a curbstone broker; all of which statements the prosecutor claimed were false. These declarations were admitted as tending to show that the accused, at the time the money and deed of the farm were obtained, was actuated by an intent to cheat and defraud Mr. Finley.

The declarations made by the accused at the time of the transaction are claimed to have been false, and that by means of them he obtained the property in question. Declarations made by him six months afterwards, variant from those, and

also variant from the truth, have a direct bearing on his character for veracity. Beyond that, we do not think the testimony throws any light on the intent of the accused at the time the acts charged were done. Evidence that the general reputation of the accused was bad for veracity would clearly be inadmissible, and so we think must be this testimony, that he told a particular falsehood. A specific charge of crime cannot be sustained by evidence of a bad reputation generally, nor by evidence of the commission of some other act of a criminal character. The effect of such testimony is to create an unfavorable impression, as to one charged with crime, in the minds of the triers. As bearing on the guilt of a party on trial for a specific offence, we think such an impression, so produced, is illegitimate and unwarranted. This testimony ought not to have been received.

Exception is taken to the charge of the judge.

On the part of the accused it was insisted that the evidence showed that no representations whatever were made by the accused to Finley until after the property in question had been delivered and had gone out of his hands; and that any subsequent representations, as to the character or value of the property received by him in exchange for that thus delivered, which might have induced him to retain possession of what he had received, and not recall what he had delivered, would not sustain the information. The court substantially, perhaps, acceded to the request of the counsel for the accused, in charging the jury in accordance with these claims. The jury were instructed that, in order to convict, they must be satisfied beyond a reasonable doubt that representations calculated to deceive were made with intent to defraud, that they induced Finley to part with his property, and that they were made before the transaction was consummated. This instruction is quite correct, and ordinarily would be sufficient, but in the peculiar circumstances of this case we think a clearer line of discrimination should have been drawn between the declarations made before and those made after the delivery of the property. The jury might have supposed, and we are inclined to think did suppose, that what was said after the

delivery of the property made part of the transaction, and must be taken into account in determining when it was consummated. Injustice therefore, we think, may have been done the accused, especially as we notice that in another part of the charge the jury were told that, if they found the facts as claimed by the state, they were in law warranted in finding a verdict for the state on each and every count in the information.

A new trial is advised.

In this opinion the other judges concurred.